UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHONDA HOWARD                                            CIVIL ACTION

VERSUS                                                  NO. 25-2185

UNIVERSAL  PROTECTION  SERVICE,  LLC,                   SECTION "N"
ET AL.

### ORDER AND REASONS

Before the Court is Plaintiff Shonda Howard's Motion to Compel Discovery.[1] Howard seeks discovery regarding the formation of the arbitration agreement relied upon by Defendants Universal Protection Service LLC and Freddie Foster in their respective motions to dismiss and compel arbitration.[2] Defendants responded in opposition to Howard's motion to compel.[3] Having considered the parties' memoranda, the record, and applicable law, the Court issues this Order and Reasons granting the motion in part.

### I.     Background

Howard filed this action against her former employer, Universal Protection Service, and her former supervisor, Freddie Foster, alleging discrimination and harassment, retaliation, and wrongful termination.[4] Defendants responded by moving to dismiss the claims and compel arbitration.[5] They argue that Howard electronically executed a binding arbitration agreement during her November 2022 onboarding process that encompasses Howard's claims (the "2022 Arbitration

---

[1] Rec. Doc. 40.
[2] Rec. Docs. 12, 18.
[3] Rec. Doc. 44.
[4] Rec. Doc. 1 at 7-8.
[5] Rec. Docs. 12, 18.

Agreement").[6]  Howard denies that she signed any arbitration agreement at any time.[7] Another Section of this Court, prior to transfer to the present one, set an evidentiary hearing to evaluate Howard's purported execution of the 2022 Arbitration Agreement, including Howard's onboarding at Universal Protection Service in or around November 2022, and her communications and other dealings with Universal Protection Service personnel in connection with that onboarding.[8] Howard now seeks discovery on the threshold question of whether a valid arbitration agreement was formed between the parties.

## II.     Legal Standard

The Federal Arbitration Act, 9 U.S.C. § 2, reflects a strong federal policy favoring arbitration.[9] That policy does not apply, however, to the threshold "'determination of whether there is a valid agreement to arbitrate between the parties.'"[10] That determination is required by "the first principle" that "[a]rbitration is strictly a matter of consent, and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration."[11]

Before ordering arbitration, a court must satisfy itself that neither the formation of the arbitration agreement nor its enforceability or applicability to the dispute is in issue (unless a valid provision in the arbitration agreement commits the

---

[6] Rec. Doc. 28 at 1; *see also* Rec. Doc. 44 at 1 n.1.

[7] Rec. Doc. 40-1 at 2.

[8] Rec. Doc. 32.

[9] *Nelson v. Watch House Int'l, LLC*, 815 F.3d 190, 193 (5th Cir. 2016) (quoting *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir.2008) ("Though the Federal Arbitration Act 'reflects a liberal federal policy favoring arbitration,' . . . that policy 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'").

[10] *Id.* (quoting *Morrison*, 517 F.3d at 254).

[11] *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 299 (2010) (internal quotation marks and citations omitted).

latter to resolution by an arbitrator). The court's inquiry thus requires two determinations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."[12] "Where a party contests either or both matters, 'the court' must resolve the disagreement."[13]

Here, Howard challenges the very existence of an arbitration agreement. The law requires the Court to resolve that challenge before ordering the arbitration that Defendants request.[14]

Howard does not merely claim that she does not recall signing an arbitration agreement.[15] Rather, in a sworn affidavit she denies signing any such agreement "at any time—electronically, in writing, or otherwise."[16] While Defendants argue that Howard addresses the wrong arbitration agreement, her affidavit denies signing *any* arbitration agreement, thereby covering the 2021 and 2022 time periods referenced in the parties' submissions.

The Court applies ordinary principles of state contract law to determine whether the parties have a valid agreement to arbitrate.[17] Where a plaintiff seeks

---

[12] *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (quoting *Am. Heritage Life Ins. Co. v. Lang,* 321 F.3d 533, 538 (5th Cir.2003)); *see also Granite Rock Co.*, 561 U.S. at 299-300 (explaining that the court must resolve the issue when enforceability or applicability of the arbitration agreement is in dispute).

[13] *Granite Rock Co.*, 561 U.S. at 299-300 (quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943 (1995)).

[14] *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) ("where the 'very existence of a contract' containing the relevant arbitration agreement is called into question, the federal courts have authority and responsibility to decide the matter."); *see also Granite Rock*, 561 U.S. at 297 (court must "resolve any issue that calls into question the formation or applicability of the specific arbitration clause" that a party seeks to enforce).

[15] *Cf. Ehrlicher v. Valero Servs., Inc.*, 2009 WL 10678966, at *2-*3 (E.D. La. Feb. 13, 2009).

[16] Rec. Doc. 21, Ex. A ¶ 3.

[17] *Am. Heritage Life*, 321 F.3d at 537-38.

discovery to develop the factual record on agreement formation, the court has discretion to permit discovery targeted to that question.[18]

### III.    Analysis

Howard argues that certain discovery is necessary to develop the evidentiary record as to whether she executed the arbitration agreement.[19] The 2022 Arbitration Agreement bears an electronic signature dated November 4, 2022, and Universal Protection Service claims Howard electronically executed the agreement during her employment onboarding process.[20] Howard denies executing any arbitration agreement and further states in her sworn affidavit that her onboarding occurred in person; she executed employment documents on paper, by hand; she did not authorize anyone to sign any documents on her behalf; and she used a computer during onboard only to obtain a required security license, not to execute employment agreements.[21]

Defendants contend that Howard has failed to make a compelling showing that discovery is warranted because Howard offers only a "bare denial" that she signed the arbitration agreement and Defendants have already produced sworn testimony from a corporate representative and contemporaneous onboarding records.[22] The corporate

---

[18] *See Munoz v. Orr*, 200 F.3d 291, 305 (5th Cir. 2000) ("District courts have considerable discretion in managing discovery."); *Turnley v. Discover Bank*, 2026 WL 431162 (M.D. La. Jan. 28, 2026) (granting fact discovery limited to the existence of an arbitration contract between the parties), *report and recommendation adopted*, 2026 WL 416922 (M.D. La. Feb. 13, 2026); *see also* Fed. R. Civ. P. 26(b)(1) (permitting discovery into any nonprivileged matter relevant to a party's claim or defense and proportional to the needs of the case).

[19] Rec. Doc. 40.

[20] Rec. Doc. 44 at 4; Rec. Doc. 12-1 at 2; Rec. Doc. 12-2 & Ex. B.

[21] Rec. Doc. 21 ¶¶ 5-13; Rec. Doc. 40-1 at 2.

[22] Rec. Doc. 44 at 1, 4-5

representative's declaration describes the onboarding system in general terms, and references and attaches certain onboarding records relating to Howard. Although the declaration indicates that Howard completed all of the onboarding documents at the same onboarding session with Universal Protection Services in November 2022, the electronic time stamp on the arbitration agreement is hours earlier than the time stamps on the other documents signed on that date, which are all within minutes of each other. The declaration establishes that the Universal Protection Service has a process and system, but Howard disputes that the process was applied to her. Limited discovery will allow Howard to test the strength of Universal Protection Service's evidence that she signed the 2022 Arbitration Agreement, rather than accept it at face value, and probe any variation in its use of the onboarding process and system with respect to her. Courts have relied on many of the types of electronic evidence that Howard seeks here to determine whether a party actually agreed to a contract.[23]

Yet as Universal Protection Service rightly contends, discovery is not an open-ended fishing expedition.[24] It must be proportional to the needs of the case and

---

[23] *See, e.g., Realogy Holdings Corp. v. Jongebloed*, 957 F.3d 523 (5th Cir. 2020) (considering timestamps, affidavits discussing business records showing activity in company's computer system, and testimony from a forensics manager regarding plaintiff's access to company's website and documents as relevant to contract formation); *Guidotti v. Legal Helpers Debt Resolution LLC*, 716 F.3d 764 (3d Cir. 2013) (internal quotation marks omitted) (quoting *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011) ("if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question").

[24] *See Russell v. Choicepoint Servs., Inc.*, 302 F. Supp. 2d 654, 671 (E.D. La. 2004) ("Discovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it.").

relevant to the claims or defenses.[25] Accordingly, the Court will allow Howard to obtain limited discovery narrowly tailored to the question of whether she executed the 2022 Arbitration Agreement.

### A. Category A: Signature and System Metadata

The Court grants Category A in part. A central issue for the Court's evidentiary hearing is the formation of the 2022 Arbitration Agreement and whether Howard agreed to it.

With respect to Category A(a),[26] Universal Protection Services shall produce the following discovery: (1) the native format of the electronic 2022 Arbitration Agreement, including all embedded metadata, audit-trail files, and associated audit-trail records; and (2) creation and modification timestamps, user IDs, and signature authentication records relating to the 2022 Arbitration Agreement because these system-generated records indicate whether and when a signing event occurred and whether the document has been altered since then.[27] The Court will not order the production of geolocation data and device identifiers because the burden of producing such information is unlikely to be proportional or have nonduplicative relevance.[28]

With respect to Category A(b), Universal Protection Service shall produce the following discovery: access logs, authentication logs, and administrative override logs from any electronic signature, onboarding, or document management platform

---

[25] Fed. R. Civ. P. 26(b)(1).
[26] Rec. Doc 40-1 at 5.
[27] *Id.*
[28] *Id.*

relating to the 2022 Arbitration Agreement.[29] Administrative override logs are relevant because, if the system permits an administrator to mark an agreement as executed without the employee completing the signing process, that bears directly on formation. The Court excludes IP logs and device and browser fingerprints from this order.

### B. Category B: Process Materials

The discovery sought in Category B is relevant to the chain of custody of the 2022 Arbitration Agreement and whether Howard was presented with the agreement and given a meaningful opportunity to review and execute it.[30] Universal Protection Service shall produce: (1) documents describing the electronic signature workflow used during Howard's November 2022 onboarding; and (2) documents sufficient to show the dates and methods of delivery of the 2022 Arbitration Agreement to Howard and any reminders, reassignments, or proxy signature features used.[31] The Court excludes any vendor user guides, configuration settings, signature invitation procedures, and identity-proofing steps from this order.

### C. Category C: Communications and Notices

The Court orders production of the discovery requested in Category C(a). Universal Protection Services shall produce all communications to or from Howard's known contact information during the November 2022 onboarding period, including system-generated emails or SMS messages and any bounce-back or delivery

---

[29] *Id.*
[30] *Id.* at 6.
[31] *Id.*

confirmation data.[32] If a signature invitation email bounced or was never opened, that is evidence of whether the arbitration agreement was in fact presented to Howard.

The Court will not order the production of the discovery requested in Category C(b). The opt-out records presuppose that an agreement was formed, and the employee had a window to withdraw. Howard is not arguing withdrawal—she is contesting formation at the threshold.

### D. Category D: Inspection and Forensic Protocol

The Court will not order the discovery requested in Category D. A forensic inspection is premature because Howard requests this category of discovery only if necessary and upon certain showings that cannot be made at this stage.

### IV.    Conclusion

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion to Compel Discovery[33] is **GRANTED IN PART AND DENIED IN PART**.

As set forth above, Universal Protection Service is ordered to produce, within 30 days of this Order:

(1) the native format of the electronic 2022 Arbitration Agreement, including all embedded metadata, audit-trail files, and associated audit-trail records generated during the signing event;

(2) creation and modification timestamps, user IDs, and signature event IDs relating to the 2022 Arbitration Agreement;

---

[32] *Id.*
[33] Rec. Doc. 40.

(3) documents describing the electronic signature workflow used during Howard's November 2022 onboarding;

(4) documents sufficient to show the dates and methods of delivery of the 2022 Arbitration Agreement to Howard and any reminders, reassignments, or proxy signature features used; and

(5) all communications to or from Howard's known contact information during the November 2022 onboarding period, including system-generated emails or SMS messages and any bounce-back or delivery confirmation data.

**IT IS FURTHER ORDERED** that the parties should be prepared to discuss at the evidentiary hearing (1) the relevance, if any, of the Arbitration Policy and Agreement attached as Exhibit A to Rec. Doc. 12-2, at 50, dated August 23, 2021, and (2) the applicability of the 2022 Arbitration Agreement, signed and dated November 4, 2022, attached as Exhibit B to Rec. Doc. 12-2, at 68, to Howard's allegations to the extent they occurred before the date of that agreement.

New Orleans, Louisiana, this 10th day of June, 2026.

_____
ANNA ST. JOHN
UNITED STATES DISTRICT JUDGE